Jonathan Shub
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2ⁿᵈ Floor
Haddonfield, NJ08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Putative Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANITA BOULWARE-JONES, | : | |
| Individually on Behalf of | : | |
| Herself and All Others | : | |
| Similarly Situated | : | CIVIL NO.: |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | **CLASS ACTION** |
| v. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| BAYER CORPORATION, & | : | |
| ELANCO ANIMAL HEALTH INC. | : | |
| | : | |
| Defendants. | : | |

### CLASS ACTION COMPLAINT

Plaintiff, Anita Boulware-Jones, brings this action on her own behalf and on behalf of all others similarly situated, and, based on knowledge with respect to her own actions and upon information and belief with respect to all other matters, alleges as follows:

## INTRODUCTION

1.     Defendants, Bayer Corporation and Elanco Animal Health, Inc., developed, tested, designed, manufactured, marketed and sold Seresto Flea and Tick Pet Collars ("Seresto Collars"), which they claimed rarely caused reactions and sensitivities in the owner's pet. In 2021, it was publicly reported that, despite these representations, the Environmental Protection Agency ("EPA") has received nearly 1,700 reported pet deaths associated with the Seresto Collars and, alarmingly, more than 75,000 adverse incident reports, with more than 10,000 classified as major or moderate incidents.

2.     Seresto Collars use a combination of pesticides that are known to be harmful to human beings if ingested as they could adversely impact the nervous system. In fact, the pesticides used should not be handled without first donning personal protective equipment. Yet, Defendants claim these pesticides, when hung around a pet's neck in the form of the Seresto Collar, will not cause harm to the pet or the humans that interact with the pet daily.

3.     Like many others, after Plaintiff's dog wore a Seresto Collar, he suffered a series of adverse reactions for which her veterinarian could not identify a cause. Ultimately, Plaintiff's dog suffered from a lymphatic cancer diagnosis and had to be put to sleep.  Only after the reports on Seresto Collars became public did Plaintiff recognize the correlation between her dog's symptoms and the Seresto Collar.

4.     Plaintiff would not have purchased a Seresto Collar had she known that Defendants falsely, misleadingly, and deceptively failed to disclose the dangers associated with the pesticides used in the Seresto Collars. Plaintiff now brings this action on behalf of herself and all others similarly situated who purchased Seresto Collars due to Defendants' misleading and deceptive practice of failing to disclose the dangers associated with the pesticides used in the

Seresto Collars and their representation that the possibility of an adverse reaction was only a rarity when in fact there have been more than 75,000 reported incidents. Plaintiff seeks damages and all other relief this Court deems just and appropriate.

## JURISDICTION

5.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

6.    The Court has personal jurisdiction over the Defendants because they conduct business in New Jersey and have sufficient minimum contacts with New Jersey.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this judicial district; because at least one Defendant resides in this District; and because the Defendants caused harm to Class members residing in this District.

## PARTIES

8.    Plaintiff, Anita Boulware-Jones, is an adult citizen who resides in Glenside, Pennsylvania. Plaintiff Boulware-Jones purchased during the class period Seresto Flea and Tick Collars from Amazon and other retailers for her pit bull, Josh. During his wearing of the Seresto Collars, Josh would regularly get unexplained rashes around the site of his collar. In July 2020, after wearing the Seresto Collar for 10 years diligently, Josh was diagnosed with lymphatic cancer. Josh was prescribed medication from his veterinarian which Plaintiff Boulware-Jones administered from July 2020 until March 2021. Ultimately, in March 2021, Josh's condition deteriorated severely. Shortly thereafter, Josh was put to sleep.

9.      Defendant, Bayer Corporation, is a German Corporation with its United States headquarters located in Whippany, New Jersey.  Prior to divesting its animal health division to Elanco Animal Health in August 2019 for $7.6 billion, Bayer developed, tested, manufactured, and marketed the Seresto Collar between 2012-2019.

10.      Defendant, Elanco Animal Health Incorporated, is an animal health company that develops, manufactures, and markets products for companion and food animals.  Elanco is headquartered in Greenfield, Indiana and is the fourth largest animal health company in the world, with revenue of $3.1 billion for the year ending December 31, 2019. After acquiring Bayer's Animal Health Division, Elanco began marketing and selling the Seresto Collars.

## FACTUAL BACKGROUND

### A.    PET FLEA AND TICK COLLARS

11.      A pest repellant collar is a device used to protect dogs and cats from fleas and ticks. The collar is a plastic strip made by mixing a pesticide with plastic resins and molding the mixture into a thin strip.[1] They are designed to deliver enough pesticide to continually kill fleas and/or ticks for up to 12 months.[2] The pesticide must be safe for prolonged skin contact with animals and non-toxic in the event the animal chews on the collar.[3]

12.      The collars are designed to provide animals with effective protection against parasitic infestations.[4] To achieve this goal, both the pesticide composition and the components used to make the collar must be carefully selected. The most important selection criterion is that

---

[1] https://www.encyclopedia.com/science-and-technology/technology/technology-terms-and-concepts/flea-collar
[2] *Id*.
[3] *Id.*
[4] *Id.*

the pesticide must efficiently kill pests without being toxic to pets.[5] It must be effective under a variety of environmental conditions, be free from significant taste or odor, and be non-staining to fur and surfaces such as carpet and furniture that the pet may contact.[6]

13.    The plastic components used to manufacture the collar must provide the appropriate release characteristics for the chosen active ingredient.[7] Since collars are designed to be worn for three, six, eight or even 12 months, the plastic must be durable.[8]

14.    The type of animal being treated is another factor to consider in the collar's design. Dogs, being larger, require a relatively higher dose of the active ingredient.[9] Cats require about half the dose as that of a dog.[10] Collars are designed to be a standard size, which is approximately 0.375 inch (0.95 cm) wide and 0.125 inch (0.32 cm) thick.

15.    The Environmental Protection Agency ("EPA") is in charge of regulating products that contain pesticides, including pet collars. Under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), the EPA determines if the pesticide is "efficacious" and "will not cause unreasonable adverse effects on humans and the environment, and that its label complies with FIFRA's prohibition on misbranding. 7 U.S.C. § 136a(c)(1)(C), (F).

16.    In 2006, the EPA implemented a registration review program pursuant to FIFRA to review registered pesticides every 15 years to determine whether it continues to meet the FIFRA standard for registration.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

B.   **THE SERESTO COLLARS**

17.     The Seresto Collars, developed by Defendant Bayer, introduced to the market in 2012, and now marketed and sold by Defendant Elanco, works by releasing small amounts of pesticide onto the animal for months at a time.[11] The pesticide is supposed to kill fleas, ticks and other pests but be safe for cats and dogs.[12] The Seresto Collars are designed to work for eight months.



18.     The package insert included with the Seresto Collars includes the following:

> As with any product, consult your veterinarian before using this product on debilitated, aged, breeding, pregnant, or nursing animals. Individual sensitivities, while ***rare***, may occur after using ANY pesticide product for pets. ***Rarely***, mild application site

---

[11] https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/
[12] *Id*.

reactions may occur, such as scratching, redness, and hair loss, which usually recover within 1 to 2 weeks without the need for collar removal. In some cases, temporary collar removal and bathing may be recommended until symptoms have disappeared. In very rare cases, application site reactions such as dermatitis, inflammation, eczema or lesions may occur. In these instances, collar removal is recommended. If signs persist or become more severe, consult a veterinarian immediately. If your animal is on medication, consult your veterinarian before using this or any other product. If your dog is experiencing an adverse event, contact your veterinarian and call 1-800-422-9874.

19.      Despite its packaging claims that "sensitivities" and "reactions" are "rare," since Seresto Collars were introduced, the EPA has received incident reports of at least 1,698 related pet *deaths*.[13] Overall, through June 2020, the agency has received more than 75,000 incident reports related to the collars, including nearly 1,000 involving human harm.[14]

20.      Prior to the 2021 reporting, a veterinarian who blogs on the website "The Healthy Dog Workshop" obtained EPA adverse reaction and incident reports for the Seresto Collars between January 16, 2016 and July 1, 2017.[15] By 2017, the EPA had received 14, 135 reported incidents, including 300 fatalities, 980 major animal reactions, 3,115 moderate animal reactions, and 8,518 minor animal reactions.[16]  Between July 2017 and June 2020, those incident reports have ballooned more than five fold.  To Plaintiff's knowledge, information and belief, Defendants have taken no curative action.

---

[13] https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/
[14] *Id.*
[15] https://healthydogworkshop.com/why-i-dont-recommend-seresto-collars/
[16] *Id.*

21.     Just a cursory review of the Better Business Bureau's online complaint database shows a litany of recent complaints about adverse impacts on pets from the Seresto Collars.[17] Just a few examples are copied below:



**Complaint Type:** Problems with Product/Service    **Status:** Unanswered ⓘ

12/30/2020

I purchased two Bayer Seresto Flea collars 50$ a piece for my two cats. My older male only 4 years of age started acting strange after wearing the collar for a couple weeks. Package states the collar can be worn for up to 8 months. I noticed some redness on my cats face and he had been itching. I removed the collar and came to find all his hair was missing in the area. After 500$ dollars in vet bills my cat is back to normal. They need to pay for what they have to done to our animals. There are tons of complaints.



**Complaint Type:** Problems with Product/Service    **Status:** Unanswered 

09/09/2020

Puppy had a very serious reaction to their flee collar,had seizure ,couldn't walk was hospitalized. Near death situation. Company doesn't acknowledge any allergic reactions. Representatives were not compassionate ,talked over you as you were trying to explain the situation . Couldn't get you off the phone fast enough. I was trying to have them cover the vet bill and price of collar ,total of $425.83.

---

[17] https://www.bbb.org/us/ks/shawnee-msn/profile/animal-health-products/bayer-healthcare-llc-animal-health-division-0674-99131210/complaints



**Complaint Type:** Problems with Product/Service    **Status:** Unanswered ⓘ

08/29/2020

Thursday August 27 2020 at ******* ****** in Lawrenceburg Kentucky I purchased a Seresto size small Flea collar for my 5 month old golden doodle who's name was ****** it was my 4 year old sons first dog 3 days before putting the collar on her we took her to the vet and had her checked out and the said she was perfect 1 days after the collar was purchased and put on she was found Diarrhea all over her having convulsions and throwing up and having no control over her body and 5 hours later she passed away and my son had to watch that , The flea collar poisoned my sons dog that we paid highly so he would have a good HEALTHY dog that would live a long life and you all destroyed that dream

**Complaint Type:** Problems with Product/Service    **Status:** Unanswered ⓘ

07/30/2020

I've never used the Seresto collar until April of this year on my dog. I put it on her and about 2 months later, she became very ill. She was hardly able to walk, not eating well and lethargic. I have brought her to the vet 3 times and they're now telling me she's in kidney failure because of this collar. I removed it from her last Saturday and gave her a good bath. She's still not getting better. I've spent $1200 in the past 4 weeks on vet bills and they're now telling me she may need to be put to sleep. My dog is dying because of the chemicals in this collar. I am bringing her to get a second opinion on what can be done.

22.    Seresto Collars contain two pesticides: imidacloprid and flumethrin.[18] Imidacloprid belongs to the neonicotinoid class of insecticides, which are the most commonly used insecticides on crops. The EPA granted the first imidacloprid registration to Mile Laboratories (now Bayer CropScience) in 1994 for use on turfgrass and ornamentals.[19]

---

[18] *Id.*
[19] https://www.acs.org/content/acs/en/molecule-of-the-week/archive/i/imidacloprid.html

23.     Because imidacloprid was first registered in 1994 it was not subject to the EPA's registration review until 2008, with an ultimate decision issued in January 2020.[20] The EPA findings include that when imidacloprid is ingested orally it impacts the nervous system, causing tremors/trembling and decreased motor activity, in multiple neurotoxicity studies in both dogs and rats.[21]

24.     The EPA's 2020 registration review recognized concerns for dermal exposure to imidacloprid for both adults and children 1-2 years old.[22] Although the EPA permitted continued imidacloprid use for commercial farming applications, it recommended canceling its use in residential spray applications for turf, on-farm seed treatment, and use on bulb vegetables, recommended the use of additional personal protective equipment for those using imidacloprid in commercial settings, and require advisory language for residential ornamental uses, among other things.[23]

25.     Imidacloprid was also part of the EPA's 2009 investigation into the safety of "spot-on" pesticide products for flea and tick control for cats and dogs. Unlike the collar, in "spot-on" products, the pesticides are dabbed on the animal's fur monthly, typically behind the neck, to prevent parasite infestation. The "spot-on" investigation began after the EPA recognized a 53% increase of adverse events with these products between 2007 and 2008.[24]

26.     At the conclusion of that investigation, the EPA recognized that the data it required to determine if the "spot-on" products were safe for pets did not "accurately predict the

---

[20]https://www.epa.gov/sites/production/files/202001/documents/imidacloprid_pid_signed_1.22.2020.pdf
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] https://www.avma.org/resources/pet-owners/petcare/flea-and-tick-treatments-epas-investigation-spot-faq

toxicity seen in the incidents that took place [with various pets]."[25] As a result, the EPA changed various reporting requirements for "spot-on" manufacturers.[26]

27.    The other active chemical in the Seresto Collars, flumethrin, is a synthetic pyrethroid that were introduced in the 1970's and used against parasites in livestock and horses.[27]   According to flumethrin's registration statement filed by Bayer HealthCare LLC, Animal Health Division with the EPA on March 14, 2013, it warns of its "Hazards to Humans and Domestic Animals,"  including "may be fatal if swallowed or absorbed through the skin" that it is also "[h]armful if inhaled" and that one should "[a]void breathing [its] dust."[28]

## PRECAUTIONARY STATEMENTS

### Hazards to Humans & Domestic Animals

**WARNING**
May be fatal if swallowed or absorbed through the skin. Do not get in eyes, on skin, or on clothing. Harmful if inhaled. Avoid breathing dust. Wash thoroughly with soap and water after handling and before eating, drinking, chewing gum, using tobacco or using the toilet. Wear coveralls worn over short-sleeved shirt and short pants, socks, chemical-resistant footwear, and gloves. Remove and wash contaminated clothing before reuse. Wear a dust/mist filtering respirator (MSHA/NIOSH approval number prefix TC-21C), or a NIOSH approved respirator with any N, R, P, or HE filter. Prolonged or frequently repeated skin contact may cause allergic reactions in some individuals.

28.    Like with most pesticides, the data supporting EPA registration of the Seresto Collars  was  conducted  by  the  company  that  produced  them,  Bayer  Animal  Health.[29]  The

---

[25] https://www.epa.gov/pets/epa-evaluation-pet-spot-products-analysis-and-plans-reducing-harmful-effectsd

[26] *Id*.

[27] https://parasitipedia.net/index.php?option=com_content&view=article&id=2677&Itemid=2994#:~:text=In%20small%20dogs%20paresthesia%20(skin,organophosphates%20or%20other%20synthetic%20pyrethroids.

[28] https://www3.epa.gov/pesticides/chem_search/ppls/011556-00154-20130314.pdf

[29] https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/

majority of the studies were looking at each pesticide individually, imidacloprid and flumenthrin, not the two in combination as used in the collar.[30]

29.    A 2012 Bayer study authored by Bayer's then-Head of Companion Animal Products Global Clinical Development in Germany, Dorothee Stanneck,[31] found that when these two pesticides are combined, they have a "synergistic effect," meaning they are more toxic together on fleas.[32] The study found that the "unique pharmacological synergism" works as quickly as six hours to prevent ticks from attaching and feeding, preventing disease transmission.[33]

30.    According to Nathan Donley from the Center for Biological Diversity, who has a doctorate in cell and developmental biology and is a former cancer researcher, said this "synergistic effect" likely extends to the pets wearing the collar.[34] She said he was not sure what makes the two pesticides so likely to cause harm, but it is clear something is wrong with the product.[35] "You don't even see these kinds of numbers with many agricultural chemicals," Donley said. "For whatever reason, this combination is just really nasty."[36]

31.    As the EPA conceded as part of the "spot-on" investigation, "[a]lthough safety trials are performed prior to approval, these tests are performed on a limited number of animals in a controlled environment, not by pet owners in a 'real world' situation. It is possible that this

---

[30] *Id.*

[31] As of August 2020, Dr. Stanneck is now an employee of Elanco as the Head of Site Management, Animal Welfare Officer.

[32] https://parasitesandvectors.biomedcentral.com/articles/10.1186/1756-3305-5-73

[33] *Id.*

[34] https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/

[35] *Id.*

[36] *Id.*

limited the agency's ability to detect safety concerns that became more apparent when the products were used in larger numbers of doses and in less controlled environments." [37]

**C.    THE EPA HAS BEEN SLOW TO RESPOND TO THE THREATS OF TOXIC PET COLLARS**

32.    In 2014, the Natural Resource Defense Council, Inc. (NRDC), filed a lawsuit against the EPA seeking a response to its nearly ten-year-old petitions to ban hazardous pesticides used in certain flea and tick collars.[38] An interested person may petition the EPA to cancel a registered pesticide.[39]

33.    Concerns were raised that the use of the pesticides neurotoxic propoxur and tetrachlorvinphos (TCVP) could cause harm to children's brains and nervous systems.[40]  The EPA severely restricted the use of these chemicals in other household pesticides, but continued to allow them in flea and tick treatments for dogs and cats.[41]

34.    The EPA failed to respond to NRDC petitions seeking a ban on these two chemicals.[42] NRDC first petitioned the EPA to cancel propoxur uses in pet collars in 2007. In 2009, NRDC released its *Poison on Pets II* report, which found that high levels of pesticide residue can remain on a dog's or cat's fur for weeks after a flea collar is put on an animal.[43] Residue levels detected in this study were found to be high enough to pose a risk to the neurological system of children at levels that greatly exceed EPA's acceptable levels.[44]

---

[37] https://www.avma.org/resources/pet-owners/petcare/flea-and-tick-treatments-epas-investigation-spot-faq
[38] https://www.ecowatch.com/epa-sued-over-toxic-pesticides-in-pet-flea-collars-1881859308.html
[39] *In re Natural Resources Defense Council, Inc.*, 956 F.3d 1134, 1136 (9th Cir. 2020) (*citing* 40 C.F.R. § 154.10).
[40] https://www.ecowatch.com/epa-sued-over-toxic-pesticides-in-pet-flea-collars-1881859308.html
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

35.    In December 2016, the EPA issued a risk assessment, which recognized that children could be exposed to TCVP through contact with pets using TCVP products and that health exposure posed considerable risks to their health.[45] The risk assessment noted that epidemiological studies have "consistently identified associations with neurodevelopmental outcomes associated with [organophosphate] exposure such as delays in mental development in infants (24–36 months), attention problems and autism spectrum disorder in early childhood, and intelligence decrements in school age children." "Therefore, there is a need to protect children from exposures that may cause these effects."[46]

36.    Yet, despite these *alarming* conclusions, the EPA took *no* action. On May 29, 2019, the NRDC filed petition for a writ of mandamus to the Ninth Circuit to compel the EPA to issue a final response to the 2009 Administrative Petition regarding TCVP.[47]

37.    In granting the NRDC's mandamus petition in April 2020, the Ninth Circuit held that the EPA had "unreasonably and egregiously delayed the performance of its statutory duties on this critical matter of public health[.]"[48]  The Ninth Circuit summarized the EPA's conduct as follows: "[f]or more than a decade, the EPA has frustrated NRDC's ability to seek judicial review by withholding final agency action, all the while endangering the wellbeing of millions of children and ignoring its 'core mission' of protecting human health and the environment."[49]

38.    Despite all of the facts above regarding Seresto Collars, including the more than 76,000 reported adverse events reported to the EPA, in its 2020 registration review of imidacloprid, the EPA determined that the human health risk assessment are "no longer of

---

[45] *In re Natural Resources Defense Council, Inc*., 956 F.3d at 1137.
[46] *Id*.
[47] *In re Natural Resources Defense Council, Inc*., 956 F.3d at 1138.
[48] *Id*. at 1134.
[49] *Id*. at 1142-43

concern."[50]  This assessment ironically mirrors the EPA's 2014 TCVP conclusion that the "risks

…. are below the [EPA's] level of concern."[51]  Further, the EPA offers no assessment of the

combination of the two pesticides, imidacloprid and flumethrin.

### D.    PET COLLARS ARE BIG BUSINESS

39.      In its 2019 annual report, German agribusiness and pharmaceutical company

Bayer reported revenue of more than $300 million on Seresto alone.

40.      The company sold its animal health division to Elanco Animal Health, a former

subsidiary of Eli Lilly and Co., for $7.6 billion in 2019. The deal was finalized in 2020. As part

of the deal, Bayer received $2.3 billion in Elanco stock, which the company said it would sell

over time.

41.      Since being spun off as its own company in 2019, Elanco has lobbied the EPA

quarterly on issues relating to animal health, according to the nonprofit Center for Responsive

Politics, which maintains a website tracking political contributions. Over two years, the company

has spent $1.6 million on lobbying, records show.

## CLASS ACTION ALLEGATIONS

42.      Plaintiff brings all claims as class claims pursuant to Fed. R. Civ. P. 23.  The

requirements of Fed. R. Civ. P. 23(a), and (b)(3) are met with respect to the Class defined below:

> All persons in the State of Pennsylvania who purchased a Seresto
> Flea and Tick Collar between March 31, 2015 and the date of class
> certification. Excluded from the Class are Defendants' officers.

---

[50] https://www.epa.gov/sites/production/files/2020-01/documents/imidacloprid_pid_signed_1.22.2020.pdf
[51] *In re Natural Resources Defense Council, Inc*., 956 F.3d at 1137

**A.**    **Numerosity**

43.    Plaintiff, on information and belief, believes and therefore avers that there are at least hundreds of members of the Class, making joinder impracticable. The Class is composed of an easily ascertainable, self-identifying set of persons who own, or owned, the Seresto Collar.

**B.**    **Commonality**

44.    There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

> (a)    Whether Defendants sold Seresto Collars knowing they could harm pets and/or humans;
>
> (b)    Whether Defendants misrepresented that Seresto Collars rarely cause sensitivities and reactions in pets;
>
> (c)    Whether Defendants knew that Seresto Collars were subject to more than 75,000 adverse incident reports to the EPA in both pets and humans;
>
> (d)    Whether Defendants omitted that Seresto Collars had a long history of adverse incidents in both pets and humans;
>
> (e)    Whether Defendants failed to disclose the known risks of the pesticides used in the Seresto Collars;
>
> (f)    Whether Defendants adequately tested Seresto Collars prior to their sale; and
>
> (g)    Whether the Seresto Collars are fit for their purpose and adhere to the representations on the packaging.

**C.**    **Typicality**

45.    Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class members, has been damaged by the Defendants' conduct in the same manner as the other Class members.

46.     Furthermore, the factual bases of Defendants' conduct are common to all Class members and represent a common thread resulting in injury to all members of the Class.

**D.      Fair and Adequate Representation**

47.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who is experienced in class action litigation.  Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

**E.      The Prerequisites of Rule 23(b)(3) are Satisfied**

48.     The questions of law and fact common to Class members predominate over any questions which may affect only individual members.

49.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

50.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.  In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties' resources, and protects the rights of each Class Member.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW, 73 P.S. § 201-1, *ET SEQ*,**
**Against Defendants**

51.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

17

52.     Plaintiff's and the Members of the Class purchased Seresto Collars for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

53.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits engaging in fraudulent or deceptive conduct (1) representing that goods have characteristics, benefits, or qualities that they do not have; (2) representing that goods or services are of a particular standard, quality, or grade, if they are of another; (3) advertising goods or services with the intent not to sell them as advertised; and (4) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4).

54.     Defendants' acts and practices, as alleged in this complaint, violate the PA UTPCPL by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions – namely, the sale of Seresto Collars to Plaintiff and members of the Class. This conduct was intended to result and did result in the sale of these goods to consumers. Specifically, Defendants:

      a.   Represented that the Product had approval or characteristics that it did not have;

      b.   Represented that the Product was of a particular standard, quality, or grade when it was actually of another;

      c.   Advertised goods or services with intent not to sell them as advertised;

      d.   Engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

      e.   Represented that consumers' purchasers of the Product conferred or involved rights that the transactions did not have or involve.

55.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Members of the Class have been harmed and have suffered ascertainable loss, in that they purchased products that they otherwise would not have. Meanwhile, Defendants have generated more revenue than it otherwise would have, unjustly enriching themselves. Defendants' violations also present a continuing risk to Plaintiff and Members of the Class and affect the public interest.

56.     Plaintiff and Members of the Class are entitled to damages (including treble damages), equitable relief, reasonably attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful, fraudulent, and deceitful activity.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## <u>Against Defendants</u>

57.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

58.     Defendants expressly represented that "sensitivities" and "reactions" to the Seresto Collars are "rare," yet it knew that since Seresto Collars were introduced, the EPA has received tens of thousands of incident reports regarding adverse incidents in pets and humans.

59.     Defendants breached their warranty that adverse incidents are and would be rare or a rarity.  Had Defendants revealed that adverse incidents were not, in fact, rare, Plaintiff and the Class would not have purchased Seresto Collars or would have paid considerably less.

60.     Plaintiff and the Class suffered, and will continue suffer, damages as a result of Defendants' breach of warranty.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### Against Defendants

61.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Defendants are and were at all times a merchant with respect to the Product.

63.     A warranty that the Product was in merchantable quality and condition is implied by law pursuant to Pa.C.S § 2314.

64.     Defendants impliedly warranted that the Product was of good and merchantable condition and quality – fit for its ordinary intended use.

65.     Defendants Elanco and Bayer breached their implied warranty because they do not pass without objection. The Seresto Collars have caused tens of thousands of adverse incidents for both pets and humans.  Furthermore, the Seresto Collars promise and affirm on the packaging that adverse events are "rare" when Defendants Elanco and Bayer otherwise knew that not to be true.  Had these facts been disclosed at the time of purchase, Plaintiff and the Class would not have purchased or otherwise paid less for the Seresto Collars.

66.     Defendants knew and intended that the Class Members would be the ultimate consumers of the Product.

67.     Defendants sold the Products into the stream of commerce, and Defendants are merchants with respect to goods such as the Product at issue.

68.     The Product was not merchantable at the time of sale, because it did not – nor could not – have any impact related to the representations as alleged herein.

69.     The Plaintiff and the Class Members did not receive the benefit of their bargain in purchasing the Product.

70.     Because of Defendants' breach of the implied warranty, the Plaintiff and Class Members were injured.

71.     Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

72.     As a result of Defendants' breach, Plaintiff and Class Members have sustained damages.

**COUNT IV**
**FRAUDULENT CONCEALMENT**
<u>**Against Defendants**</u>

73.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     Defendants fraudulently concealed material facts that they had a legal duty to disclose to Plaintiff and the Class regarding the risks associated with the Seresto Collars.

75.     Defendants knew that the pesticides used in the Seresto Collars were dangerous and could lead to health issues in pets and humans.

76.     Defendants had knowledge of the dangers associated with the Seresto Collars at the time of Plaintiff and the Class's purchase.

77.     Defendants intentionally and knowingly omitted the known dangers of the pesticides used in the Seresto Collars to induce Plaintiff and the Class to purchase the Seresto Collars.

78.     Defendants knew that the concealment or nondisclosure of these facts concerning the safety of the Seresto Collars was material to consumers because they contradicted the representations on the packaging that the risk of adverse incidents was "rare."

79.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Seresto Collar.

80.     Defendants were under a duty to disclose to Plaintiff and the Class the true safety, quality, and characteristics for use by a domestic pet of the Seresto Collars because: (1) Defendants were in a superior position to know the true state of facts about their product; (2) Defendants were in a superior position to know the true risks associated with the pesticides used in the Seresto Collars; and (3) Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Seresto Collars were misleadingly labeled as only "rarely" causing adverse reactions in pets. Alleged Premium Dog Foods were

81.     Defendants had a legal duty to disclose this information because Defendants knew the representations on the Seresto Collars' packaging created a false impression unless these omitted facts were disclosed to Plaintiff and the Class.

82.     Plaintiff and the Class had no knowledge of the true safety, quality, and characteristics of the Seresto Collars based on Defendants' fraudulent concealment and nondisclosures and had no ability to discover the omitted information prior to purchasing the Seresto Collars. Given the deceptive manner in which Defendants chose to omit or not disclose material information concerning the safety and quality of the Seresto Collars, Plaintiff and the Class were injured.

83.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they purchased Seresto Collars worth less than the price they paid.

84.     Plaintiff and the Class would not have purchased the Seresto Collars at all had they known the true safety and quality of the product.

85.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available under the law.

### COUNT V
### UNJUST ENRICHMENT
### Against Defendants

86.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     Plaintiff and the Class, through the purchase of the Seresto Collars, have conferred substantial benefit on Defendants. Defendants knowingly and willingly accepted and enjoyed these benefits.

88.     Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Seresto Collars would have the safety, quality, characteristics, and suitability for use by a domestic pet as represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

89.     Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

90.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

91.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, respectfully requests that the Court:

(i)      grant class certification of the Class, designate Plaintiff as the name representative of the Class, appoint her counsel as Class Counsel;

(ii)      enter judgment in favor of Plaintiff and the Class;

(iii)      award Plaintiff and the Class all available compensatory and statutory damages, trebled;

(iv)      award both pre-and post-judgment interest on amounts awarded;

(v)      award Plaintiff and the Class their costs of suit and reasonable attorneys' fees; and

(vi)      award such other or further relief as the Court may deem appropriate, just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Date: May 12, 2021                          Respectfully submitted,

By:  *Jonathan Shub*
Jonathan Shub
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
Tel:     (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and the putative Class*

24